## IN THE UNITED STATES DISTRICT COURT
## FOR THE TENTH CIRCUIT IN KANSAS

| | | |
|---|---|---|
| **Melissa Tosatto** | ) | |
|     8833 N. Congress | ) | |
|     Kansas City, Missouri 64153 | ) | |
| | ) | |
|             Plaintiff, | ) | |
| v. | ) | Case No.  09-CV-2071 JAR/JPO |
| | ) | |
| **Apollo Group, Inc.,** | ) | |
| **d/b/a University of Phoenix** | ) | Division: |
|     8345 Lenexa Drive Suite 200 | ) | |
|     Lenexa, Kansas 66214 | ) | |
| | ) | |
|          Defendant. | ) | |

## COMPLAINT

### I.    Preliminary Statement

1.    COMES NOW Plaintiff, Melissa Tosatto, by and through her attorneys, Kevin Baldwin and Eric Vernon, of *BALDWIN & VERNON, ATTORNEYS AT LAW*, and brings this cause of action against The Apollo Group, Inc., d/b/a The University of Phoenix, hereinafter collectively referred to as "Defendant" or "Company." This action seeks declaratory, injunctive and equitable relief, compensatory and punitive damages, and costs and attorneys fees for Defendant's conduct and actions taken against Plaintiff.

### II.    Jurisdiction

2.    The Americans with Disabilities Act of 1990 (ADA), 104 Stat. 42 U.S.C. § 12101 et seq. (1994).

3.    Jurisdiction is invoked pursuant to 28 USC § 1343 (4) and 42 USC § 2000e-5 (f). A Right-To-Sue letter was issued by the Equal Employment Opportunity Commission (EEOC) on

1

November 13, 2008, and was received on November 15, 2008. The Right-To-Sue Letter, including a copy of Plaintiff's original charge of discrimination filed with the EEOC, is attached hereto as exhibit 1 and is hereby incorporated as if fully set forth herein.

       4.      Declaratory, injunctive, and equitable relief is sought pursuant to 28 USC §§ 2201, 2202, and 42 USC § 1981a.

       5.      Costs and attorneys fees may be awarded pursuant to 42 USC § 2000e-5(k) and the Federal Rules of Civil Procedure 54 and are requested by Plaintiff. The amount in controversy exceeds seventy-five thousand ($75,000.00) dollars.

## III.    Venue

       6.      This action properly lies in the United States Federal Court for the District of Kansas, pursuant to 29 USC §1391(b), because the claims arose in this judicial district, and pursuant to 42 USC § 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district.

## IV.    Parties

       7.      Plaintiff is a female and is a citizen and resident of the United States and Platte County, Missouri respectively, residing at 8833 N. Congress, Kansas City, Missouri 64153.

       8.      Defendant Company is an employer engaged in an industry affecting commerce, and, upon information and belief, employs more than 50 regular employees. Defendant is a Corporation duly organized and existing under the laws of the State of Arizona and maintains places of business in the State of Kansas and this judicial district. Defendant was doing business in this judicial district at all times alleged herein. Defendant is an employer within the meaning of 42 USC '2000e *et seq.*, 42 USC '1981a *et seq.*

## V.  Facts Common to All Counts

9.      Plaintiff Tosatto applied to the University of Phoenix through careerbuilder.com for the position of a Financial Counselor and had her first interview on March 18, 2008.

10.     Plaintiff was told by a Caucasian female, whose name she believes was Amy, that it was extremely difficult to find good quality candidates with experience.

11.     Amy told the Plaintiff that based upon her experience, she would be good in the Financial Counselor position. At the close of the interview, Plaintiff was given an Apollo handbook, and was told that she was moving on to the 2nd interview for 1 of 30 open positions.

12.     Plaintiff then received a phone call approximately an hour later, and was scheduled for an interview for Friday, March 21, 2008.

13.     Subsequently, Plaintiff interviewed with Mikaela Claymore on March 21, 2008. Ms. Claymore was extremely friendly and told Plaintiff that Defendant was searching for 15 Financial Counselors, and 15 Academic Counselors.

14.     Plaintiff asked Ms. Claymore several questions, via email, regarding the requisite hours necessary for the position, and the benefits offered. She responded to Plaintiff almost immediately, and indicated that Plaintiff would be working 9:00 am to 6:00 pm most days.

15.     On Wednesday March 26, 2008, Plaintiff saw that Defendant was also hiring for the position of "Marketing Analyst." Plaintiff informed Ms. Claymore that she was interested in that position, due to her desire to get her MBA in Marketing.

16.     Ms. Claymore responded to Plaintiff's email in approximately 8 minutes, and told Plaintiff that it is not a very "people oriented" position, and that she thought Plaintiff would be better suited for one of the 30 positions for which she had already interviewed.

17.     Ms. Claymore told Plaintiff at the close of her second interview that, "pending a background check, I would be interested in submitting an offer to you."

18.     On Friday, March 28, 2008, Ms. Claymore called Plaintiff to say that her background check came in fine, and that she wanted Plaintiff to come in for a third interview with Christine, who was the manager for the open positions.

19.     Plaintiff interviewed with Christine on Monday, March 31, 2008. Christine once again reiterated to Plaintiff that it was extremely difficult to find a good quality candidate for the Financial Counselor position. She expressed great excitement regarding Plaintiff's education (B.A. from UMKC) and four years of banking experience.

20.     Christine also informed Plaintiff of a more direct route to the office due to the fact that they both lived in the Northland.  After the close of the interview, Christine asked if Plaintiff had any questions. It was at this point that Plaintiff informed her that she had narcolepsy.

21.     Plaintiff also informed Christine that she had to take medicine to control the symptoms, but that she might need a reasonable accommodation that would consist of an extra break throughout the training and possibly a 10-15 minute nap if needed in the afternoon.

22.     Christine informed Plaintiff that it would be fine, and that she appreciated Plaintiff's honesty.  She then asked Plaintiff to meet with the Vice President of the facility. Plaintiff stayed around approximately 10 to 15 minutes to meet him, but he was too busy so Plaintiff left.

23.     Plaintiff was told by Defendant's management that she did very well, and that she would be receiving an offer pending her background check.

24.     As a direct result of those comments, Plaintiff had turned down a position with Russell Stover Candies, Inc.

4

25.     On Friday, April 5, 2008, Plaintiff emailed Ms. Claymore to follow up after her third interview.  Ms. Claymore did not respond.

26.     Plaintiff called the main number for the University of Phoenix, and asked to be transferred to Ms. Claymore. Plaintiff told Ms. Claymore that she had not received any information regarding the position, and Ms. Claymore told Plaintiff that they mailed a letter on Thursday or Friday.

27.     The letter was actually mailed on April 1, 2008, the very next day after Plaintiff's last interview, and it indicated that they were going with a different candidate. The letter was sent to Plaintiff from Paulette Thornton, at the University of Phoenix's HR department in St. Louis, Missouri.

28.     Plaintiff was not hired due to her disability.

29.     After receiving the letter, Plaintiff called Defendant company and asked to be transferred to Christine and left a voicemail in which Plaintiff indicated that she would like Christine to call her back.

30.     Christine called Plaintiff back on Monday, April 11, 2008, and informed Plaintiff that she determined during the third interview that Plaintiff would not be a good fit for the position. This despite the fact that she wanted to introduce Plaintiff to the Vice President. (It was at the close of this third interview that Plaintiff informed them of her disability and need for reasonable accommodation.)

## VI.    Causes of Action

### COUNT I – DISABILITY DISCRIMINATION

### (FAILURE TO HIRE)

31.    Plaintiff hereby incorporates paragraphs 1 to 30 as if fully re-alleged herein.

32.    Plaintiff has been diagnosed with narcolepsy, and is therefore considered a member of the protected category under the Americans with Disabilities Act.

33.    Plaintiff was qualified and capable of performing the essential functions of the position and/or would have been if reasonable accommodations had been made for her handicap.

34.    Despite her qualifications, Plaintiff was discriminated against by the Defendant during the hiring process and was not hired due to her handicap.

35.    Plaintiff has suffered damage as a result of Defendant's failure to hire her because of her disability.

### COUNT II – PERCEIVED DISABILITY DISCRIMINATION

### (FAILURE TO HIRE)

36.    Plaintiff hereby incorporates paragraphs 1 to 35 as if fully re-alleged herein.

37.    Plaintiff has been diagnosed with narcolepsy, and shared that information with the Defendant's management.

38.    Plaintiff was qualified and capable of performing the essential functions of the position with or without a reasonable accommodation.

39.    Despite her qualifications, Plaintiff was discriminated against by the Defendant during the hiring process and was not hired due to the fact that Defendant perceived her as having a handicap which they did not wish to accommodate.

40.     Plaintiff has suffered damage as a result of Defendant's failure to hire her because of her perceived disability.

## VII.   Prayer for Relief

41.     Wherefore, Plaintiff prays that this Court:

      a.     declare the conduct engaged in by Defendant to be in violation of Ms. Tosatto's rights;

      b.     enjoin Defendant from engaging in such conduct;

      c.     restore Ms. Tosatto to her rightful position with Defendant or, in lieu of reinstatement, order front salary and benefits for the period remaining until normal retirement;

      d.     award Ms. Tosatto equitable relief of back salary and fringe benefits up to the date of reinstatement and prejudgment interest for that entire period, or front salary and benefits accrual;

      e.     award Ms. Tosatto compensatory, punitive and liquidated damages;

      f.     award Ms. Tosatto her costs and attorneys' fees; and

      g.     grant such other relief as it may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands trial by jury on all issues as triable by a jury in this complaint.

## PLACE OF JURY TRIAL

Plaintiff demands that the trial of this matter be held in Kansas City, Kansas.

Respectfully submitted,

**BALDWIN & VERNON**

/s/ Kevin Baldwin

Kevin Baldwin  KS. Bar No. 18637
Eric Vernon, KS Bar No. 23158
11 E. Kansas Street
Liberty, Missouri 64068
(816) 842-1102
Fax (816) 842-1104
Kevin@bvalaw.net
Eric@bvalaw.net
**ATTORNEYS FOR PLAINTIFF**

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:
Melissa Tosatto
8833 N. Congress
Kansas City, MO  64153

From:  Kansas City Area Office
Gateway Tower II
400 State Avenue
Kansas City, KS  66101

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 563-2008-01369 | Lawrence S. Warren, Jr., Investigator | (913) 551-5842 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Billie I. Ashton,
Area Office Director

11/13/08
*(Date Mailed)*

Enclosures(s)

cc:
Matthew D. Mitchell
EmploymentAttorney
APOLLO GROUP, INC.
4025 South Riverpoint Parkway
Phoenix, AZ 85040

Kevin Baldwin
Baldwin & Vernon, Attorneys At Law
11 E. Kansas Street
Liberty, MO  64068

PLAINTIFF'S EXHIBIT #1

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| | Agency | Charge Number |
|---|---|---|
| | FEPA | 5G3-2008- |
| X | EEOC | 01369 |

**TO:   Missouri Commission on Human Rights and EEOC**

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE NUMBER |
|---|---|
| Melissa Tosatto | (816) 405-2000 |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | DATE OF BIRTH (MM/DD/YY) |
|---|---|
| 8833 N. Congress, Kansas City, Missouri 64153 | 2/06/1980 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NO. OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| University of Phoenix-Northland Learning Center | + 50 | (816) 943-9600 |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | | COUNTY |
|---|---|---|
| 10150 N.W. Ambassador Drive, Kansas City, Missouri 64153 | | Platte |

| NAME | NO. OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Paulette Thornton, Training Manager & The University of Phoenix / Axia College of University of Phoenix | 10+ | (314) 288-1144 |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | | COUNTY |
|---|---|---|
| 13801 Riverport Drive, Suite 102          St. Louis, Missouri 63043 | | St. Louis |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| RACE ____    NATIONAL ORIGIN ____    RELIGION_____ RETALIATION ___ | **On April 7, 2008** |
| AGE____    SEX _____  **DISABILITY __X_**    COLOR_____    OTHER (specify) _X_    **PERCEIVED DISABILITY & FAILURE TO HIRE** | CONTINUING ACTION _X_ |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

# Please see attached document, Exhibit A.

RECEIVED
2008 MAY -9 PM 12:01
EEOC KANSAS CITY AREA OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | Notary — (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| Date 5-1-2008    Charging Party (Signature) | SUBSCRIBED AND SWORN BEFORE ME THIS DATE (Day, month, and year)   5-1-2008 |

EEOC FORM 5 (Test 10/94)

" NOTARY SEAL "
Pamela J. McCurley , Notary Public
Ray County, State of Missouri
My Commission Expires 2/17/2009
Commission Number 05469483

## EXHIBIT "A"

## CHARGE OF DISABILITY DISCRIMINATION, PERCEIVED DISABILITY DISCRIMINATION AND FAILURE TO HIRE

**Melissa Tosatto v. University of Phoenix–Northland Learning Center.**

I, Melissa Tosatto, was born on February 6, 1980, I am presently 28 years of age and I am female. It is my contention that I have been discriminated against by University of Phoenix-Northland Learning Center, (hereinafter referred to as University) on the basis of my disability with regard to the terms and conditions of my potential employment. The last act of continuing discrimination by University against me on the basis of my disability became apparent to me on or about April 7, 2008, when after I had my second interview, I was essentially told that I would be hired pending a background check. My background check came back as good. Subsequently, after I informed University that I had a recognized disability and would require some reasonable accommodations, I was told that they decided not to hire me. At the time of my interest with the University, I had been told they were hiring for as many as 30 positions. It is now clear to me that this failure to hire me as an act of discrimination based on my having a disability and being perceived as too disabled (in violation of the Missouri Human Rights Act and the Americans with Disabilities Act of 1990) even though I was more than qualified for any one of the 30 positions in which they were seeking employment. The disability discrimination and retaliation by University has been continuous both before April 7, 2008 and continually thereafter.

The following recitation includes some, but not all, of the acts of discrimination which make up my complaint:

I applied to the University of Phoenix through Career Builder.com. Tom Prehm invited me in for my first interview on March 18, 2008. I was told by a Caucasian female, whose name I think was Amy, that it was extremely difficult to find good quality candidates with experience. She said that based upon my experience, I would be good in the Financial Counselor position. At the close of the interview I felt very confident that my talents were noticed, as I was given an Apollo handbook, and was told that I was moving on to the 2nd interview for 1 of 30 open positions. I received a phone call approximately an hour later, and was scheduled for an interview for Friday, March 21, 2008.

Subsequently, I interviewed with Mikaela Claymore on March 21, 2008. Ms. Claymore was extremely friendly and she reiterated to me that University was searching for 15 Financial Counselors, and 15 Academic Counselors. I asked Ms. Claymore several questions, via email, regarding the requisite hours necessary for the position, and the benefits offered. She responded to me almost immediately, and indicated that "I" would be working 9:00 am to 6:00 pm most days.

On Wednesday March 26, 2008, I saw that University was also hiring for the position of "Marketing Analyst." I informed Ms. Claymore that I was interested in that position, due to my desire to get my MBA in Marketing. Ms. Claymore responded to my email in approximately 8

1

minutes, and told me that it is not a very "people oriented" position, and that she thought I would be better suited for one of the 30 positions for which I had already interviewed. Ms. Claymore told me at the close of my second interview that, "pending a background check, I would be interested in submitting an offer to you."

On Friday, March 28, 2008, Ms. Claymore called me to say that my background check came in fine, and that she wanted me to come in for a 3rd interview with Christine, who was the manager for the positions.

I interviewed with Christine on Monday, March 31, 2008, and she was immediately friendly, and reiterated that it was extremely difficult to find a good quality candidate for the Financial Counselor position. She expressed great excitement regarding my education (B.A. from UMKC) and four years of banking experience. She also informed me of a more direct route to the office due to the fact that we both live in the Northland. This would naturally be irrelevant if she had no intention of hiring me. **After the close of the interview, Christine asked if I had any questions, it was at this point that I informed her that I had Narcolepsy.** I informed her that I take medicine to control the symptoms, but that I might need an extra break throughout the training so that I would be able to take a 10-15 minute nap if needed in the afternoon. She informed me that it would be fine, and that she appreciated my honesty. She then asked me to meet with the Vice President of the facility. I stayed around approximately 10 to 15 minutes to meet him, but he was too busy so I just left. At this point I felt very confident as I was told that I did very well, and that pending my background check, since Ms. Claymore had said she would be interested in submitting an offer based upon a good background check. As a direct result of her comment, I had turned down a position with Russel Stovers.

I was more than qualified for the Financial Counselor position, as it only required a high school diploma, and I had overwhelming college credit in finance and accounting as well as four years of banking experience.

On Friday, April 5, 2008, I emailed Ms. Claymore to follow up after my 3rd interview. She did not respond, which was unusual as she had always been very quick in returning my emails. I called the main number for the University of Phoenix, and asked to be transferred to Ms. Claymore. **In the past she had always been warm and friendly to me, but when I told her who I was, she became very silent.** I told her that I had not received any information regarding the position, and she told me that they mailed a letter on Thursday or Friday.

The letter was actually mailed on April 1, 2008, the very next day after my last interview, and it indicated that they were going with a different candidate. **The letter was sent to me from Paulette Thornton, at the University of Phoenix's HR department in St. Louis, Missouri.** (A copy of the letter has been attached hereto). I was baffled as there were 30 positions, and I was told from the very first interview that I was an excellent candidate for the position, and that they were having trouble filling the spot. In addition, they said they were still interviewing other candidates and would not start making decisions until towards the end of the week. At first, I was confused as to why I had not been selected given the feedback I had been given -- nothing but high marks in each of my three interviews.

It became apparent to me at that point, that the only viable reason for not hiring me was due to my disability. I asked to be transferred to Christine, and Ms. Claymore did so. I left her a voicemail in which I indicated that I would like her to call me back. She called me back on Monday, April 11, 2008, and informed me that she determined during my third interview that I would not be a good fit for the position. This was particularly difficult to comprehend as she wanted to introduce me to the Vice President. (It was at the close of this 3rd interview that I informed them of my disability and need for reasonable accommodation.)

I have attempted to go on with my life; however, it is becoming increasingly difficult as I have been without employment since February 5, 2008. I have been harmed by this process, particularly because I believed that I already had the position, and I stopped sending out résumés. It is my contention that University did not hire me as a result of a plan and/or scheme by the members of University's management to not hire me because of my disability. As a result of these actions I have suffered, and continue to suffer now and into the indefinite future, monetary loss, and emotional distress due to the actions of University and its managers.

I am seeking compensatory damages for the mental pain, suffering, and distress that I have endured as a result of these discriminatory and retaliatory acts committed against me by University. I am also seeking reimbursement for all attorney's fees, costs, and expenses I have incurred as a result of my having to prosecute this Charge of Disability Discrimination, both through the administrative process and the judicial forum, if it becomes necessary.

Melissa Tosatto

RECEIVED
2008 MAY -9 PM 12: 01
EEOC
KANSAS CITY AREA OFFICE

3